**UNITED STATES of America, Plaintiff,**

v.

**Ray G. CRISPEN and Joel Glucroft, Defendants.**

**No. 86 CR 629.**

United States District Court,
N.D. Illinois, E.D.

Nov. 5, 1987.

Robert M. Stephenson, Cotsirilos, Crowley, Stephenson, Tighe & Streicker, Ltd., Chicago, Ill., for Crispen.

Luis M. Galvan, Federal Defender Program, Chicago, Ill., for Glucroft.

Joan B. Safford, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., for plaintiff.

**MEMORANDUM AND ORDER**

MORAN, District Judge.

■ The government originally brought this case largely on the basis of an "intangible rights" concept. After *McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), it went back to the drawing board and came up with a superseding indictment which somewhat altered the concept. Defendants claim that the alteration does not escape the *McNally* strictures and move to dismiss the mail fraud and wire fraud counts, Counts I–IV, VI, VIII, and X–XXII. That motion is denied.

The post-*McNally* universe is, naturally enough, rather circumscribed. In *McNally* the case went to a jury pursuant to a charge which permitted conviction upon a finding that the defendant had engaged in a scheme to defraud the citizens of Kentucky of their right to the honest conduct of the state's business. The evidence disclosed that the defendant took kickbacks but that was not the theory of the charge, and the Court was careful to note (107 S.Ct. at 2882, n. 9) that it had to assume that the sharing of commissions did not offend state law (and therefore apparently would not have to be paid over to the state). Justice Stevens in his dissent recognized that employee disloyalty may still be within the reach of the mail fraud statute by depriving the employer of the services for which he is paying (2890, n. 10).

*McNally* was followed, six days later, by *United States v. Fagan*, 821 F.2d 1002 (5th Cir.1987), where the jury instructions were not the issue. The relevant issue, rather, was whether the evidence established a scheme to defraud, and the court there held that evidence of kickbacks in an unregulated market could support a mail fraud con-

viction. The court there indicated that the property rights violated could be a lessee's loss of control over the use of its money, its possibly inflated rentals, and its right to recover the kickbacks from its disloyal employee (1011, n. 6).

Since then we have had the benefit of *United States v. Gimbel*, 830 F.2d 621 (7th Cir. Aug. 6, 1987), and *United States v. Wellman*, 830 F.2d 1453 (7th Cir.1987). The theory in *Gimbel* was that the Treasury Department was deprived of accurate and truthful information and data and, after *McNally*, the government argued that such information and data might have led to the collection of additional taxes. The jury was not required to find, however, that the scheme did result in such a deprivation and, accordingly, the conviction was reversed. In *Wellman*, the defendant participated in a scheme to sell certain tanks which did not meet government specifications, while representing that they did, which caused economic injury to the victim. While the pre-*McNally* indictment had used intangible rights language, the court noted that the indictment, the proof and the jury charge all were directed toward a scheme involving concrete economic harm, a "garden variety fraud perpetrated ... in part through the United States mail" (at 1463).

The mail fraud statute in all probability can no longer serve as the basis for election fraud prosecutions. Perhaps employee disloyalty not involving specific economic losses may be reached on the basis of deprivation of services for which the employee was compensated. Justice Stevens considered that issue to be left open by *McNally*. The kickback scenario would seem to have an even better chance of survival, possibly on a theory of loss of control and resources, probably when it can be shown that the victim is entitled to recover the kickback from its disloyal employee and certainly when the kickback inflated the prices paid.

Where the line will ultimately be drawn by the courts or, through amendatory legislation, by Congress, is not something, however, that needs to be considered here. In the present indictment the government has charged a scheme involving conduct which in some respects may not have caused concrete economic harm to the alleged victim, the University of Illinois. But some of the conduct, part of a single fraudulent scheme, allegedly did cause such harm, including underpriced sales of product from 1979 on, sales below cost from 1983 on, misrepresentations of costs, failures to collect delinquent accounts, causing the University to subsidize the cost of research by distribution of free or below cost samples, using University employees and facilities for that purpose, and selling below the mandated price. How much of the conduct which comprises the alleged scheme can serve as a basis for conviction under the mail fraud statute is a matter to be considered in the drafting of jury instructions. It is enough for now that the government has charged a continuing and comprehensive scheme which, it contends, was perpetrated in part through the United States mails and by telephone and resulted in concrete economic harm to the University. The motion to dismiss is denied.

■ Defendant Glucroft has moved to sever pursuant to Rule 14. That motion is denied. Defendant Glucroft is not alleged to have engaged in all the conduct of which defendant Crispen is accused. The two defendants are, however, charged with engaging in a common enterprise and this court anticipates that the evidence will be largely common. This court sees no reason why any possible improper "spillover" cannot be controlled by appropriate instructions and rulings to the jury.